No. 3-02-0933

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

PEKIN INSURANCE COMPANY,

Plaintiff-Appellant,

v.

ANN PHELAN individually and doing business as R. ROOTZ SALON, JACQUELIN A. ELGIN, and IMAGINATIONS ON HAIR, INC., a corporation,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of the 10th Judicial Circuit Peoria County, Illinois

No. 02-MR-68

Honorable John A. Barra, Judge, Presiding

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, Pekin Insurance Company (Pekin), appeals the circuit court's judgment that it had a duty to defend a suit against its insured, Ann Phelan, and her business, R. Rootz Salon.  The underlying suit, initiated by Imaginations on Hair, Inc., alleges that Phelan and others made statements intended to lure customers away from Imaginations.  Phelan claimed coverage from the suit under her business insurance policy underwritten by Pekin.  Pekin argues that the underlying complaint does not allege conduct covered by the insurance policy because Phelan's statements did not disparage Imaginations.  We affirm, finding that the statements disparaged Imaginations and hold that the policy language obligates Pekin to defend the suit.

Ann Phelan and R. Rootz Salon (together, Phelan), are also defendants in a separate, underlying lawsuit pending in the circuit court. Prior to opening R. Rootz Salon, Phelan was employed by  Imaginations on Hair, Inc.  The underlying complaint, initiated by Imaginations, alleges that near the end of Phelan’s employment, she engaged in activities designed to lure clients away from Imaginations and bring them to R. Rootz Salon. The complaint alleges that Phelan told customers that Imaginations was moving to a new location, and then gave the customers the address of R. Rootz Salon.  The complaint further claims that Phelan made appointments for Imaginations’ customers at her new salon, telling customers that Imaginations was closing, and that she engaged in other activities to lure customers away from Imaginations. 

Phelan made a claim under the liability insurance policy that she purchased from Pekin to cover her and R. Rootz Salon. In the claim, Phelan requested that Pekin defend her in the lawsuit brought by Imaginations. Pekin denied the claim and filed a complaint for declaratory judgment, asking the circuit court to rule that the insurance policy did not cover the allegations in Imaginations' complaint and that Pekin was not obligated to defend the suit.  

The policy provides that Pekin must reimburse Phelan for sums she is legally obligated to pay as a result of various injuries, including "advertising injury."  Pekin also assumed a duty to defend any suit seeking damages from advertising injury. The policy covers offenses by the insured committed in the course of advertising its goods, products and services. Furthermore, the policy limits advertising injuries, in part, to oral or written statements that disparage an organization’s goods, products or services. 

Pekin moved for summary judgment, arguing that the underlying complaint did not state allegations resembling those which Pekin was obligated to defend. Phelan also moved for summary judgment, claiming that since the complaint alleges disparagement of Imaginations’ services, Pekin has a duty to defend Phelan in the underlying suit.  The circuit court ruled for Phelan.

The circuit court issued its order on November 12, 2002. Pekin filed its notice of appeal on November 26, 2002, but on December 9, Phelan filed a motion for leave to file a counterclaim.  The counterclaim alleged that if Phelan was found liable in the underlying suit, Pekin was obligated to reimburse her under the policy.  The trial court denied the motion, prompting Phelan to file a motion to reconsider.  That motion is pending in the circuit court. 

I.  Jurisdiction 

Subject to certain exceptions, appeals can only be taken from final orders disposing of all claims against all parties; thus, this court cannot exercise jurisdiction until all claims are resolved in the trial court.  Unless a trial court order includes an express finding that no just reason exists for delaying the appeal, it must resolve all claims; otherwise, an order is not appealable.  
Marsh v. Evangelical Covenant Church
, 138 Ill. 2d 458, 465 (1990).
 

A motion for sanctions, filed after judgment and notice of appeal but within thirty days of judgment, nullifies the notice of appeal and corresponding appellate court jurisdiction. 
John G. Phillips and Associates v. Brown
, 197 Ill. 2d 337 (2001).  Motions for sanctions under Supreme Court Rule 137 are "claims" in the cause of action with which they are connected. 
Brown
, 197 Ill. 2d at 340.  Specifically, Rule 137 defines proceedings for sanctions as "a claim within the same civil action."  S. Ct. Rule 137.  

Phelan agrees that this court was vested with jurisdiction when Pekin filed its notice of appeal. However, relying on 
Brown
, Phelan argues that the motion for leave to file a counterclaim, filed within thirty days of the circuit court’s judgment, nullified the notice of appeal and divested the appellate court of its jurisdiction.  We disagree. 

In 
Brown
, our supreme court determined that the appellate court lost jurisdiction because motions for sanctions are "inextricably interwoven with the case in which they arise," and because those motions are defined as claims by Supreme Court Rules.  
Brown
, 197 Ill. 2d at 344-45.  Motions for sanctions are unique because they often necessarily depend on the course taken and conduct exhibited by counsel and the parties.  
Brown
, 197 Ill. 2d at 344.  A counterclaim filed after judgment and after the filing of a notice of appeal does not share these distinct characteristics.  The counterclaim is not, as the court in 
Brown
 said, "inextricably interwoven" with the case.  197 Ill. 2d at 344.  Thus, we decline Phelan's invitation to broaden the holding in 
Brown
.  Since Phelan’s motion did not nullify the notice of appeal, we exercise jurisdiction over the case. 

II.  Disparagement

Since this issue involves the interpretation of an insurance policy, we review it 
de novo
. 
American States Insurance Company v. Koloms
, 177 Ill. 2d 473, 479-80 (1997). 

Pekin claims that the injury alleged against Phelan in the underlying complaint does not constitute an advertising injury that falls within the "disparagement" language of the policy.  When reviewing an insurer's duty to defend a suit, we look to the allegations in the underlying complaint.  
U.S. Fidelity and Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 74 (1991).  If the underlying complaint alleges facts within or potentially within the policy coverage, the insurer is obligated to defend the insured.  
U.S. Fidelity and Guaranty Co.
, 144 Ill. 2d at 74 .  We must also construe the underlying complaint liberally and resolve all doubts in favor of the insured.  
LaGrange Memorial Hospital v. St. Paul Insurance Co.
, 317 Ill. App. 3d 863, 869 (2000).

In its argument, Pekin relies on 
Lexmark International Inc. v. Transportation Insurance Company
, 327 Ill. App. 3d 128, 140 (2001), to support its position. The 
Lexmark
 court defined disparagement as "statement[s] about a competitor’s goods which [are] untrue or misleading and [are] made to influence or tend to influence the public not to buy."  
Lexmark
, 327 Ill. App. 3d at 140.  The 
definition of disparagement in 
Lexmark
 can easily be broken down into three elements. The statement (1) must be about a competitor’s goods or services, (2) must be untrue or misleading, and (3) must have been made to influence or tend to influence the public not to buy those goods or services.  
Lexmark
, 327 Ill. App. 3d at 140.  We will examine each of these elements in light of the allegations in the underlying action to determine whether the complaint alleges that Phelan disparaged Imaginations, thereby obligating Pekin to defend the suit.

First, Phelan's statements were made about Imaginations’ services.  The underlying complaint relies on that assertion.  Phelan told customers that Imaginations was closing or changing locations.  The statements imply that Imaginations is ceasing its current services and leaving its current location.  Since the statements are about Imaginations, they meet the first 
Lexmark
 requirement. 

Second, in the underlying complaint, the statements are alleged to be both untrue and misleading.  Imaginations alleges that Phelan falsely told customers that Imaginations was closing.  The complaint also alleges that Phelan told customers that Imaginations was changing locations, and gave them the address to Phelan’s new salon.  That statement was untrue and also misleading. 

Last, we must determine whether the statements were made to influence the public not to buy Imaginations’ services.  The complaint alleges that the statements were made with that intent. Imaginations claims that Phelan made numerous untrue statements trying to lure customers away from its salon.  Phelan’s statements all tended to induce the customers not to use Imaginations’ services in the future, because the statements suggested that the services would be unavailable in the future.

Thus, it appears that all the elements of disparagement were alleged in the underlying complaint. Nevertheless, Pekin claims that 
Lexmark
 also requires that the disparaging statements be "negative," or "words which criticize the quality of one's goods and services
."  
Lexmark
, 327 Ill. App. 3d at 140.  In 
Lexmark
, the plaintiff in the underlying action alleged that Lexmark, the insured, advertised its products in a way that disparaged the plaintiff's product.  The court found that Lexmark’s statements actually never referred to the competitor’s products or services, let alone disparaged them; thus, Lexmark engaged only in self-promotion. 
Lexmark
, 327 Ill. App. 3d at 140-41. In 
dicta
, the court discussed negative statements only in relation to proving the elements of disparagement, i.e. describing a type of statement that might be untrue or misleading, or that might influence a customer not to patronize a business.  The 
Lexmark
 court never considered such negative statements by a defendant as a separate element of disparagement.

In this case, the allegations against Phelan pled disparagement under the terms of the insurance policy: Phelan's statements were specific to Imaginations, they misled, and they tended to influence the consuming public not to buy Imaginations' services.  Since the complaint properly alleged disparagement, Imaginations' allegations fall within the coverage language of the insurance policy.  Pekin is obligated to defend the underlying suit.

III.  Public Statement

Pekin also argues that its insurance policy requires that injurious statements be directed to the public at large.  The language of Pekin's policy, however, belies that claim.  The policy defines advertising injury, in part, as a statement that disparages an organization’s goods, products or services.  We have already determined that the underlying complaint alleges that Phelan disparaged Imaginations’ services.  The policy includes no requirement for publication to the general public, and we will not add one. See 
Oak Park Trust & Savings Bank v. Intercounty Title Co.
, 287 Ill. App. 3d 647, 651 (1997). 

IV.  Accidental Conduct

Pekin also claims that the underlying complaint alleges only intentional acts by Phelan, and such acts do not qualify as an "occurrence" under the policy.  Pekin asserts that the policy only covers damages arising from accidental conduct by the insured. 

We do not accept Pekin’s narrow interpretation of the policy.  It provides that Pekin will "pay those sums that the insured becomes legally obligated to pay as damages because of *** advertising injury."  No other language in the policy limits the coverage to accidental conduct.  In fact, a later provision refers to an advertising injury as an "offense" that is "committed."  The policy does not restrict advertising injury coverage to accidental conduct. 

V.  Policy Coverage

Last, Pekin contends that the underlying complaint does not allege conduct that occurred while Phelan was insured. Specifically, Pekin argues that Phelan did not begin operating her salon until August 2001, and since the complaint alleges that the injurious statements were made before July 31, 2001, she could not have been operating the salon as required by the policy.  Phelan alleges that her new salon existed prior to August 2001 and within the time frame established by the underlying complaint.  Pekin cites nothing in the record before us to indicate otherwise.

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HOLDRIDGE and SLATER, JJ., concur.