# Illinois Official Reports

## Appellate Court

***Green4All Energy Solutions, Inc. v. State Farm Fire & Casualty Co.*,**
**2017 IL App (1st) 162499**

| | |
|---|---|
| Appellate Court Caption | GREEN4ALL ENERGY SOLUTIONS, INC., Plaintiff-Appellant, v. STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-16-2499 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | May 1, 2017<br><br>June 9, 2017<br>June 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-15220; the Hon. Anna Helen Demacopoulos, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Edward A. Bishop, of Bishop Diehl & Lee, Ltd., of Chicago, for appellant.<br><br>Michael Resis, Glen E. Amundsen, and Timothy R. Lessman, of SmithAmundsen LLC, of Chicago, for appellee. |

JUSTICE MIKVA delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1    The issue presented in this case is whether "State Farm Insurance Company" (State Farm)[1] owed its insured, Green4All Energy Solutions, Inc. (Green4All), a duty to defend in an underlying lawsuit filed by Flow Dynamics, LLC (Flow). The underlying suit was filed in February 2015, Green4All tendered its defense of the underlying suit to State Farm in April 2015, and in May 2015, State Farm refused the tender. The underlying case settled in September 2015 and Green4All filed this action against State Farm, alleging that State Farm breached its insurance contract with Green4All and violated section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2014)) by refusing to defend its insured. The circuit court granted State Farm's cross-motion for summary judgment, holding that the underlying complaint failed to allege an advertising injury covered by the insurance policy. For the following reasons, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND
¶ 3                                   A. The Policy
¶ 4    State Farm issued an insurance policy to Green4All effective September 21, 2014, through September 21, 2015 (the Policy). The Policy provided both that State Farm would "pay those sums that the insured becomes legally obligated to pay as damages" as a result of any " 'personal and advertising injury' to which this insurance applies" and that State Farm would defend the insured against suits seeking such damages. The Policy defined a "personal and advertising injury" as an injury "arising out of," in pertinent part, an "[o]ral or written publication, in any manner, of material that *** disparages a person's or organization's goods, products or services." The Policy defined an "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

¶ 5    The Policy excluded coverage for those personal and advertising injuries "[c]aused by or at the direction of the insured with the knowledge" that the actions would cause such an injury; "[a]rising out of oral or written publication of material if done at the action or direction of the insured with knowledge of its falsity"; "[a]rising out of the failure of goods, products or services to conform with any statement of quality or performance" made in the insured's advertisement; or "[a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."

---

[1]Although State Farm was sued in the instant case as "State Farm Insurance Company," in a footnote in its opening brief, it states that its correct name is "State Farm Fire & Casualty Company."

## B. The Underlying Complaint

In February 2015, Flow filed its complaint against Green4All and Green4All's president, Dan Handley, in the United States District Court of the Southern District of Florida (case No. 9:15-cv-80129). Flow alleged that, in April 2014, it was issued patent No. 8,707,981, titled "System for Increasing the Efficiency of a Water Meter." According to Flow's complaint, the patent "describes a system that is used to remove entrained water bubbles from a water supply and thereby increase the efficiency of an associated water meter." Flow sells this "patented system commercially under the mark 'Smart Valve™.'" Flow alleged that, "[u]pon information and belief," Green4All sold a competing system called "H2minusO®" which it advertised as "having the ability to correct billable consumption rates by increasing the efficiency of water meter readings." Flow alleged that H2MinusO "directly infringe[d] one or more claims of [its] Patent." In counts I through III, Flow set forth claims of direct and indirect patent infringement by Green4All and indirect patent infringement by Mr. Handley.

In count IV, which is the only count that Green4All contends provides the basis for a duty to defend, Flow set forth a claim of "False Marking" by both Green4All and Mr. Handley, alleging, in pertinent part:

"38. [Green4All and Mr. Handley] have falsely marked the H2MinusO® as being 'patent pending' in [Green4All's] commercial literature when, upon information and belief, no application has been filed in the name of [Green4All]. On information and belief, the application [Green4All and Mr. Handley] were referring to was in fact the application of [Flow].

39. Plaintiff has been competitively harmed in commerce by this false marking because the marking tends to persuade customers and potential customers that the H2MinusO® product, which marketed and sold competitively with [Flow]'s 'Smart Valve™', is superior to [Flow]'s product.

40. The false marking complained of herein also implies that [Green4All and Mr. Handley] invented, or are otherwise responsible for novelty of, the 'Smart Valve™' product when such is not the case.

41. Plaintiff seeks injunctive relief to preclude [Green4All and Mr. Handley] from further marking and advertising that [their] products as [*sic*] 'patent pending.' The harm suffered by [Flow] is irreparable."

The parties to the underlying litigation ultimately settled, and in September 2015, the case was closed.

## C. The Present Action

Green4All filed the instant complaint against State Farm on October 16, 2015, asserting claims for breach of contract and violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2014)). Green4All sought declarations that State Farm had "a contractual obligation to defend and to reimburse defense fees *** under insurance policies that provide for defense and indemnification for certain 'advertising injury' claims made against Green4All in lawsuits like the [underlying action]" and that State Farm owed Green4All a duty to defend in the underlying suit. Green4All's complaint referenced the contents of the underlying complaint, specifically including paragraphs 38 through 41, and alleged that although Flow dismissed count IV in April 2015, it "continued to maintain that Green4All

was falsely marking its H2MinusO® as 'patent pending.' " Green4All stated that Flow had sufficiently alleged facts to constitute a "personal and advertising injury" that was covered by the Policy. Green4All alleged that it tendered a copy of the underlying complaint to State Farm in April 2015, requesting a defense and indemnity under the Policy. In May 2015, State Farm rejected Green4All's request, alleging that "there was [*sic*] no allegations of 'personal and advertising injury.' "

¶ 12      In count I for breach of contract, Green4All alleged that State Farm breached the insurance contract by refusing to defend Green4All in the underlying action, refusing to advance legal fees while the underlying action was pending, and failing to pay Green4All's attorney fees and costs. In count II for violation of section 155 of the Insurance Code, Green4All alleged that State Farm's refusal to fulfill its defense obligations was "vexatious and unreasonable," "deprived Green4All of sufficient funds to pay its bills [or] cover its losses," and "jeopardized Green4All's ability to operate its business efficiently in the future." Green4All demanded full coverage under the Policy and attorney fees.

¶ 13      On January 3, 2016, State Farm answered the complaint, denying it owed a duty to defend Green4All in the underlying suit and asserting, as affirmative defenses, a number of Policy exclusions that it claimed barred coverage.

¶ 14      On February 3, 2016, Green4All moved to strike the affirmative defenses, arguing that, because State Farm had neither sought a judgment declaring it had no duty to defend Green4All nor actually defended Green4All in the underlying suit under a reservation of rights, "it [was] estopped from raising the policy exclusions to coverage as Affirmative Defenses." The circuit court set a briefing schedule on the motion to strike and, after a hearing, denied the motion.

¶ 15      Green4All filed a motion for summary judgment as to count I of its complaint on May 22, 2016, arguing that count IV of the underlying action fell "squarely within the language of the Policy as a matter of law, and thus, State Farm owed Green4All a duty to defend."

¶ 16      In response, State Farm filed a cross-motion for summary judgment, again asserting that it owed no duty to defend Green4All in the underlying action because the allegations of the underlying complaint did not fall within coverage under the Policy, several Policy exclusions applied to bar coverage, and that, because no coverage obligation existed, State Farm did not violate section 155 of the Insurance Code.

¶ 17      Following briefing and a hearing held on August 16, 2016, the circuit court denied Green4All's partial motion for summary judgment and granted State Farm's cross-motion for summary judgment. The court noted, in part, that for Green4All to qualify for coverage under the Policy, the underlying complaint needed to include an allegation that Green4All made a disparaging statement about Flow's product. Because the underlying complaint did not include any allegation that Green4All referred to Flow or Flow's product in its commercial literature, the complaint did not allege that a disparaging statement was made. The court accordingly found that State Farm had no duty to defend Green4All.

¶ 18                                    JURISDICTION

¶ 19      Green4All timely filed its notice of appeal on September 14, 2016. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1,

1994); R. 303 (eff. Jan. 1, 2015).

¶ 20                                          ANALYSIS

¶ 21     "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). When parties file cross-motions for summary judgment, they agree that there are no issues of material fact and that the case disposition turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). We review the circuit court's ruling on cross-motions for summary judgment *de novo*. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22.

¶ 22     Green4All argues that State Farm owed it a duty to defend because the allegations of the underlying complaint contained facts that fell within the Policy definition of a covered "personal and advertising injury." In response, State Farm argues that it had no duty to defend Green4All, both because the underlying complaint did not contain allegations that fell within the Policy definition and because several exclusions within the Policy applied to bar coverage based on the underlying complaint.

¶ 23     In interpreting the provisions of an insurance policy, the court's primary objective is "to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). If the policy's language is unambiguous when given its plain and ordinary meaning, it must be applied as written. *Id.* at 363. Any ambiguous language in the policy will be construed against the insurer. *Id.*

¶ 24     "To determine whether an insurer has a duty to defend its insured from a lawsuit, a court must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy" and the allegations "must be liberally construed in favor of the insured." *Id.* If the facts of the underlying complaint "fall within, or potentially within, the policy's coverage, the insurer is obligated to defend its insured." *Id.* "This is true even if the allegations are groundless, false, or fraudulent ***." *Id.* "In addition, the alleged conduct, rather than the labeling of the claim in the [underlying] complaint, determines whether the insurer has a duty to defend." *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1059 (2010).

¶ 25     On appeal, Green4All argues that the underlying complaint alleged at least one type of advertising injury as defined by the Policy: an injury that arose from an "[o]ral or written publication, in any manner, of material that *** disparages a person's or organization's goods, products or services." Both parties appear to agree that the "commercial literature" referred to in the underlying complaint constitutes an "advertisement" under the Policy. So, the issue is whether the alleged contents of that literature constituted disparagement. As Green4All states in its reply brief, "[t]his appeal boils down to a single determinative inquiry: does the [underlying] complaint allege that Green4All disparaged Flow *** or its Smart Valve™ product?" For the following reasons, we find that the underlying complaint does not contain sufficient allegations to constitute such a claim of disparagement.

¶ 26     "Disparagement" is not specifically defined in the Policy, but has been defined by this court as "words which criticize the quality of one's goods or services." (Internal quotation marks omitted.) *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 140 (2001). As the *Lexmark* court further explained:

- 5 -

"To qualify as disparagement, there must be statement[s] about a competitor's goods which [are] untrue or misleading and [are] made to influence or tend to influence the public not to buy. [Citation.] Disparagement has been found where there are allegations the insured, in its advertising, criticized the quality of the underlying plaintiff's product as being inferior." (Internal quotation marks omitted.) *Id.*

¶ 27 This standard "can easily be broken down into three elements." *Pekin Insurance Co. v. Phelan*, 343 Ill. App. 3d 1216, 1220 (2003). To qualify as disparagement, "[t]he statement (1) must be about a competitor's goods or services, (2) must be untrue or misleading, and (3) must have been made to influence or tend to influence the public not to buy those goods or services." *Id.*

¶ 28 Count IV of the underlying complaint, which is the only count Green4All points to, alleged that Green4All "falsely marked the H2MinusO® as being 'patent pending' in its commercial literature," that the patent application Green4All was referring to actually belonged to Flow, that Flow was "competitively harmed in commerce" by the alleged false marking because it "tend[ed] to persuade customers and potential customers that the H2MinusO® product" was superior to Flow's product, and that the false marking "implie[d]" that Green4All invented Flow's product when it did not. But, without more, these allegations simply do not satisfy the first element of a disparagement claim: that Green4All made a disparaging statement about *Flow's* product.

¶ 29 Green4All's marking of its product as "patent pending" is a neutral designation that does not even qualify as a statement about the quality of *Green4All's* product. The term "patent pending" is the "designation given to an invention while the Patent and Trademark Office is processing the patent application" and "warns others that a patent may issue and that if it does, copiers might become infringers." Black's Law Dictionary (10th ed. 2014). As Green4All itself argued in the circuit court—in support of its contention that coverage was not barred by an exclusion for an injury arising out of the failure of the insured's goods to conform with a statement of quality or performance made in its advertisement—the fact that a device has a patent application pending "has no bearing on its quality or how well it performs. It is simply an indication that a patent application is pending that covers the device."

¶ 30 Moreover, even if Green4All was alleged to have made a positive statement about its own product, such a statement about a party's own product, without any comparative language, simply cannot constitute disparagement of another product. See *Greenwich Insurance Co. v. RPS Products, Inc.*, 379 Ill. App. 3d 78, 80-81, 88 (2008) (finding no disparagement where the underlying complaint alleged that the insured falsely marked its replacement air filter as fitting into the underlying plaintiff's air purifiers, because the underlying complaint contained no allegations that the insured "criticized the quality of [the underlying plaintiff's] air filters"). Because the Flow complaint does not allege that Green4All referred to Flow's product in any manner in its commercial literature, it did not allege a claim of disparagement against Green4All.

¶ 31 Although not bound by it, we are persuaded by the reasoning in *Heritage Mutual Insurance Co. v. Advanced Polymer Technology, Inc.*, 97 F. Supp. 2d 913 (S.D. Ind. 2000). See *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30 ("lower federal court decisions are not binding on Illinois courts, but may be considered persuasive authority"). After a bench trial, the district court in *Heritage Mutual* found that the insurer had no duty to defend the insured,

APT, in an underlying action filed by Environ "since its complaint definitively fail[ed] to contain allegations that APT committed an advertising injury offense." *Heritage Mutual*, 97 F. Supp. 2d at 916. The *Heritage Mutual* court observed that "Environ's only allegation involving advertising involves APT's use of the phrase 'patent pending' in its advertisements, which Environ believe[d] cloud[ed] ownership of the invention." *Id.* at 932. The district court specifically noted that "APT's advertisements never refer[red] to Environ or any other competitor" and "Environ simply fail[ed] to claim that APT said anything negative about its piping, which negative connotation is, after all, the essence of disparagement." *Id.* We are presented with the same situation in this case and reach the same result. Because the underlying complaint failed to allege that Green4All made any statements in its commercial literature comparing its own product to Flow's, denigrating Flow's product, or mentioning Flow's product in any way, it did not allege that Green4All disparaged Flow or Flow's product.

¶ 32     Flow's allegations of a disparaging *effect* from Green4All's advertising—*i.e.*, that it was harmed because the "patent pending" marking on Green4All's product tended to persuade customers that Green4All's product was superior to Flow's and falsely implied that Green4All invented Flow's product—do not change the fact that the necessary disparaging *statement* is missing. As this court made clear in *Lexmark*, disparagement requires a statement "about a competitor's goods." (Internal quotation marks omitted.) *Lexmark*, 327 Ill. App. 3d at 140. The only "statement" Green4All was alleged to have made was an objective, noncomparative statement about its own product.

¶ 33     We also disagree with Green4All's assertion that, "contrary to the trial court's findings, case law plainly holds that it is not necessary for Flow *** to allege that Green4All specifically mention[ed] Flow *** or its products for allegations to constitute disparagement." To support its contention, Green4All relies, primarily, on *JAR Laboratories LLC v. Great American E&S Insurance Co.*, 945 F. Supp. 2d 937 (N.D. Ill. 2013) (*JAR Labs*), and *Acme United Corp. v. St. Paul Fire & Marine Insurance Co.*, 214 Fed. App'x. 596 (7th Cir. 2007). But not only are these cases merely persuasive authority, rather than precedential (*Wilson*, 2012 IL 112026, ¶ 30), they are also factually distinguishable.

¶ 34     In both *JAR Labs* and *Acme*, the advertisements at issue were alleged to have made comparisons to the underlying plaintiffs' products, either directly or indirectly, resulting in the denigration of those products. In *JAR Labs*, the underlying plaintiff—who owned a prescription-brand pain relief patch—alleged that the insured had falsely advertised that its own pain relief patch " 'contain[ed] the same active ingredient as the leading prescription patch' " and would provide pain relief for up to 24 hours " '[l]ike the prescription brand.' " *JAR Labs*, 945 F. Supp. 2d at 940. The Northern District concluded that the advertisements compared the insured's products to the prescription brand and could "reasonably be read to identify [the prescription-brand pain relief patch] explicitly, if not by name." *Id.* at 943.

¶ 35     In *Acme*, the advertisements at issue stated that the "Titanium Bonded" scissors sold by the insured were, " '3 times harder than stainless steel' " scissors and had a " 'sharper, more durable and longer lasting cutting edge.' " *Acme*, 214 Fed. App'x. at 597. In reversing the district court's grant of summary judgment in favor of the insurer, the Seventh Circuit noted that the underlying complaint "clearly alleged that [the insured's] advertisements drew a comparison between its products and stainless steel products and asserted that [the insured's] products were superior because they contain[ed] titanium." *Id.* at 600. And although the

underlying plaintiff did not allege that it was expressly named in the advertisements, it "specifically alleged that [the insured's] advertisements were directed at [the underlying plaintiff's] products." *Id.* The Seventh Circuit held that the underlying complaint sufficiently alleged that the insured disparaged the underlying plaintiff's products "th[r]ough a *false comparison*." (Emphasis added.) *Id.* at 600-01.

¶ 36    Neither *JAR Labs* nor *Acme* is persuasive here because Flow alleged only that Green4All marked its product as "patent pending." As we noted above, whether true or false, this is simply not an express or implied statement of comparison with any other product, named or unnamed. The remaining cases that Green4All relies on, in addition to not being controlling authority, are similarly distinguishable from this case because the underlying complaints alleged that the insured had compared its products to other products, even if those other products were not specifically named. See, *e.g.*, *E.piphany, Inc. v. St. Paul Fire & Marine Insurance Co.*, 590 F. Supp. 2d 1244, 1259 (N.D. Cal. 2008) (finding a duty to defend based on disparagement where the underlying complaint included allegations that the insured falsely and publicly claimed it was the " ' "*first* full suite CRM vendor to market a complete product suite built on J2EE" ' " and that it released " ' "the *only* component-based, fully-J2EE complete CRM suite available" ' " (emphases added)); *Winklevoss Consultants, Inc. v. Federal Insurance Co.*, 11 F. Supp. 2d 995, 998 (N.D. Ill. 1998) (underlying complaint included allegations that the insured disparaged the underlying plaintiff's product by falsely promoting that the insured's software could " ' " 'code up' a valuation in a fraction of the time required by other systems" ' ").

¶ 37    Because the Flow complaint contained no allegations sufficient to constitute a claim of disparagement against Green4All, State Farm did not owe Green4All a duty to defend in the underlying action, did not breach its insurance contract with Green4All, and did not violate section 155 of the Insurance Code. We need not consider State Farm's alternative argument that certain Policy exclusions also applied to bar coverage of Green4All's claim. Accordingly, the circuit court properly granted summary judgment in favor of State Farm.

¶ 38                                                    CONCLUSION
¶ 39    For the forgoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.