2022 IL App (1st) 210628-U

SECOND DIVISION
November 15, 2022

No. 1-21-0628

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 19 CH 12138 |
| DRAGANA PETROVIC, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Moshe Jacobius, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Ellis and Cobbs concurred in the judgement.

**O R D E R**

¶ 1    *Held*: The circuit court properly granted summary judgment in favor of the insurer declaring that it had no duty to indemnify or defend the insureds because the underlying accident occurred while the insured was operating his personal vehicle during the scope of employment, triggering the "auto exclusion" provision of the policy.

¶ 2    This cause arises from a declaratory judgment action (735 ILCS 5/2-701 (West 2020)) filed by the plaintiff-appellee, Erie Insurance Exchange (Erie) against the defendants, Aral Construction

Company (Aral) and Arunas Alasevicius (Alasevicius) and the defendant-appellant, Dragana Petrovic (Petrovic), seeking a declaration that Erie was not obligated to defend or indemnify Aral or Alasevicius in the underlying negligence claim brought by Petrovic. In that underlying negligence claim,[1] Petrovic alleged that she sustained personal injuries and property damage when a truck driven by Alasevicius struck her open car door as she was exiting her parked car and knocked her unconscious. Petrovic further alleged that Aral owned or operated the truck that struck her and that Alasevicius was acting in the scope of his employment with Aral at the time of the accident. Both Aral and Alasevicius were insured under a commercial general liability policy with Erie (the insurance policy) at that time. After receiving notice of the underlying negligence claim, Erie filed the instant declaratory judgment action seeking a declaration that it was not obligated to indemnify or defend Aral or Alasevicius. Specifically, Erie claimed that: (1) Alasevicius failed to provide it with proper notice of the accident; and (2) that coverage was barred under the "auto exclusion" provision of the insurance policy.

¶ 3    After discovery, Petrovic and Erie filed cross-motions for summary judgment seeking a declaration regarding Erie's duty to defend Aral and Alasevicius. The circuit court entered judgment in favor of Erie and against Petrovic. On appeal, Petrovic seeks reversal of the circuit court's order arguing that: (1) Alasevicius provided Erie with sufficient notice of the accident; and (2) the "auto exclusion" provision of the insurance policy did not bar coverage since, at the time of the accident, Alasevicius was not acting as an employee of Aral but rather as its executive. For the following reasons, we affirm.

¶ 4                                   I. BACKGROUND

¶ 5    The record below reveals the following undisputed facts and procedural history. The motor

---

[1] At the time this appeal was filed, the underlying negligence action was still pending in the circuit court.

vehicle accident at the heart of the underlying negligence claim occurred on October 25, 2017, at 5706 North Richmond Street in Chicago. Alasevicius was driving a truck when he struck the open car door of Petrovic's parked car, as she was attempting to exit it, rendering Petrovic unconscious. Alasevicius stopped the truck and exited, but when Petrovic regained consciousness, he left.

¶ 6 On December 13, 2018, Petrovic filed a negligence claim against Alasevicius. On August 28, 2019, she amended her complaint to include Aral. According to that amended complaint, numerous negligent acts, and omissions by Alasevicius, including, *inter alia*, his failure to keep a proper and sufficient lookout, to decrease his speed to avoid a collision, and to keep his truck under proper control proximately resulted in Petrovic's bodily injuries and damage to her car. Specifically, the amended complaint alleged that Petrovic suffered a closed head injury with brain damage including numerous side effects, such as vision impairment and headaches. Petrovic incurred $300,000 in medical bills, $75,000 in lost income, and $2085.80 in damage to her car.

¶ 7 In addition, the amended complaint alleged that Aral owned and/or operated the truck driven by Alasevicius and that Alasevicius was driving to a job site as part of his employment with Aral when he struck Petrovic.

¶ 8 At the time of the accident, Alasevicius was personally insured by State Farm Insurance (State Farm), while Aral was insured under the insurance policy with Erie.

¶ 9 The Erie policy titled "Fivestar Contractors Policy No. Q26-1820846" is a commercial general liability policy and was issued to Aral for the effective dates of February 18, 2017, to February 18, 2018, with a limit of $1 million. The policy provides liability coverage for bodily injury and property damage arising from Aral's business. As the policy states:

"We will pay those sums that the insured becomes legally obligated to pay as damages, including punitive or exemplary damages, but only for vicarious liability to the extent

3

allowed by law because of 'bodily injury' or 'property damage' to which this insurance applies. We have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

¶ 10    The insurance policy defines an "insured" in the following manner:

"**SECTION II—WHO IS AN INSURED**

1. If you are designated in the Declarations as

***

d. An organization other than a partnership, joint venture, or a limited liability company, you are an insured. Your 'executive officers' and 'directors' are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds but only with respect to their liability as stockholders.

***

2. Each of the following is also an insured:

a. Your 'volunteer workers' only while performing duties related to the conduct of your business, or your 'employees,' other than *** your 'executive officers' (if you are an organization other than a partnership, joint venture or limited liability company) *** but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."

¶ 11    With respect to the scope of coverage the policy contains numerous exemptions including, relevant to this appeal, the "auto exclusion" provision, which states that the insurance does not apply to:

" 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or

4

entrustment to others of any *** 'auto' *** owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.' "

This provision further provides:

"This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any *** 'auto' *** that is owned or operated by or rented or loaned to any insured."

¶ 12    With respect to the timing of a "bodily injury" or "property damage," the policy provides that each "will be deemed to have been known to have occurred at the earliest time when" any insured or any employee authorized by Aral "to give or receive notice of an 'occurrence' or claim": (1) reports all or part of the injury or property damage to Erie "or any other insurer;" (2) receives a written or verbal demand or claim for damages based on such an injury or property damage; or (3) becomes aware by any other means that such an injury or damage has occurred or has begun to occur.

¶ 13    The insurance policy further contains numerous conditions. Relevant to this appeal, the condition titled "Duties in the Event of Occurrence, Offense, Claim or Suit" requires the insured to notify Erie "as soon as practicable of any 'occurrence' or an offense which may result in a claim." In addition, this provision states that if a claim is made or a suit is brought against an insured, the insured must "immediately record the specifics" of the claim or suit, as well as "notify" and provide Erie with written notice of the claim or suit "as soon as practicable."

¶ 14    Nearly two years after the accident, on September 10, 2019, Alasevicius notified Erie of the accident and the underlying lawsuit. A month later, on October 21, 2019, Erie filed the instant

declaratory judgement action seeking a declaration that it was not required to defend or indemnify Alasevicius or Aral under the insurance policy. Only Petrovic participated in the declaratory judgment action. Neither Aral nor Alasevicius filed any pleadings in the circuit court.

¶ 15    During discovery, Alasevicius was deposed and provided the following undisputed testimony. Alasevicius is a self-employed carpenter. In 2007 he incorporated his company, Aral. Alasevicius is the president and sole officer and employee of the company. Unlike subcontractors for Aral, who receive 1099 forms, as an employee of Aral, Alasevicius receives a salary and a W-9 form.

¶ 16    At the time of the accident, on October 25, 2017, Alasevicius personally owned the 2010 Toyota Tundra truck that struck Petrovic. He purchased the truck in his own name and with a personal car loan that he paid off in 2015. The car was insured through his personal insurance with State Farm with a liability limit of $25,000. Alasevicius paid his car insurance monthly using his personal credit card. He never rented the truck to Aral, nor placed any markings on it denoting that it was the property of Aral.

¶ 17    On the date of the incident, Alasevicius was operating his truck for work, driving it between two construction sites, at Lake Avenue in Wilmette and at Hollywood Avenue in Chicago, where he intended to check on a delivery of materials. One of his subcontractors, Rafal Majestic, was in the front passenger seat of the truck, when Alasevicius struck Petrovic.

¶ 18    Alasevicius notified State Farm about the accident on October 25, 2018, twelve days after Petrovic filed her original negligence complaint against him. He stated that at the time of the accident, he approached Petrovic to make sure that she was alright, after which they both agreed not to exchange insurance information since there seemed to be no damage to either vehicle, and Petrovic appeared to be unharmed. Alasevicius was shocked when, one year later, he received

notice of Petrovic's negligence complaint against him.

¶ 19    Alasevicius was aware that Erie insured Aral at the time of the accident and that under that policy he had an obligation to notify Erie of the incident. Alasevicius, however, acknowledged that he did not notify Erie about the accident until September 10, 2019. He explained that he did so immediately after he received Petrovic's amended complaint naming Aral as an additional defendant in the underlying negligence suit. Prior to this he did not review his insurance policy with Erie.

¶ 20    On September 9, 2020, Erie filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law because: (1) Alasevicius breached the notice conditions of the insurance policy by waiting nearly two years after the accident to notify Erie of what had occurred; and (2) the "auto exclusion" provision barred coverage of Aral and Alasevicius for the accident because Alasevicius was operating his own truck when he struck Petrovic.

¶ 21    On September 22, 2020, Petrovic filed her own motion for summary judgment asserting, *inter alia*, that she was entitled to judgment as a matter of law because: (1) Alasevicius had met the notice conditions of Erie's insurance policy by timely notifying his personal insurer, State Farm; and (2) the "auto exclusion" provision did not apply.

¶ 22    On January 5, 2021, after extensive arguments, the circuit court entered summary judgment in favor of Erie and against Petrovic. The court found that because there was no dispute that the accident arose out of the use of a truck "owned and operated" by Alasevicius the "auto exclusion" provision in the insurance policy barred coverage. The court further held that because the "auto exclusion" exception was dispositive, it did not need to reach the late notice issue raised by Erie.

¶ 23    On February 3, 2021, Petrovic filed a motion to reconsider, arguing that under the plain

language of the insurance policy, because Alasevicius was an executive officer, he was only an "insured" and therefore could only be excluded from coverage under the "auto exclusion" provision with respect to the performance of his duties as an executive officer. According to Petrovic, because Erie failed to establish that Alasevicius was managing the business and affairs of the corporation, *i.e.*, that he had his "corporate hat" on, at the time of the accident, the "auto exclusion" provision did not apply.

¶ 24    On March 17, 2021, the circuit court denied Petrovic's motion to reconsider. The court found that throughout the proceedings Petrovic had made numerous judicial admissions that Alasevicius could be both an employee and an executive officer of Aral, and that, when the accident occurred, Alasevicius was, in fact, acting in his role as an employee, triggering the "auto exclusion" provision. The court further found that the exception applied regardless of Alasevicius' status as an executive officer or an employee. In addition, the court held that even if the "auto exclusion" provision could not be triggered by Alasevicius acting as an executive officer, it nonetheless applied because it was clear that at the time of the accident, he had loaned the truck to Aral.  Petrovic now appeals.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, Petrovic contends that the circuit court improperly held that the "auto exclusion" provision of the insurance policy applied to Alasevicius and therefore barred coverage for the accident. She contends that Erie failed to provide any evidence that at the time of the accident Alasevicius was acting in the scope of his duties as an "executive officer" of Aral, so as to be considered an "insured" under the "auto exclusion" provision. In response, Erie contends that under the plain language of the insurance policy, Alasevicius can simultaneously act as an "employee" and an "executive officer" of Aral and was therefore an "insured" under the "auto

exclusion" provision. In addition, Erie argues that regardless of whether the "auto exclusion" provision bars coverage, it has no duty to defend Aral or Alasevicius because Alasevicius failed to notify it of the accident until two years after its occurrence and therefore breached the "notice" conditions of the policy. For the following reasons, we find that the "auto exclusion" provision dispositively bars coverage and that the circuit court properly granted summary judgment in favor of Erie.

¶ 27    At the outset, we note that "the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020); see also *Green4all Energy Solutions Inc. v. State Farm Fire & Casualty Co.*, 2017 IL App (1st) 162499, ¶ 21; see also *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Where, as here, cross-motions for summary judgment are filed, the parties acknowledge that there are no material questions of fact and that the case disposition turns solely on the resolution of legal issues regarding the construction of the insurance policy. *Green4all Energy Solutions*, 2017 IL App (1st) 162499, ¶ 21; see also *Founders Insurance  Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010); *American Family Mut. Ins. Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009). We review the circuit court's decision on cross-motions for summary judgment *de novo*. *Virginia Surety Co.*, 224 Ill. 2d at 556; see also *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22.

¶ 28    Just as with any contract, in interpreting the provisions of an insurance policy, a reviewing

court's primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). To ascertain the meaning of the policy, the court must construe the policy as a whole, as well as consider the risks undertaken, the subject matter that is insured, and the purpose of the entire contract. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108 (1992). Where the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written. *Valley Forge Insurance*, 223 Ill. 2d at 363. However, if the words in the policy are susceptible to more than one reasonable interpretation, they will be considered ambiguous and will be strictly construed in favor of the insured and against the insurer who drafted the policy. *Id.* see also *Outboard Marine Corp.*, 154 Ill. 2d at 108.

¶ 29    To determine whether an insurer has a duty to defend an action against the insured, a reviewing court must compare the allegations of the underlying complaint to the relevant portions of the insurance policy. *Green4all Energy Solutions*, 2017 IL App (1st) 162499, ¶ 24; see also *Valley Forge Insurance*, 223 Ill. 2d at 363; *Outboard Marine Corp.*, 154 Ill. 2d at 108. The allegations must be construed liberally in favor of the insured. *Valley Forge Insurance*, 223 Ill. 2d at 363. If the underlying complaint alleges facts that fall "within or potentially within" the coverage of the policy, the insurer is obligated to defend its insured even if the allegations are "groundless, false, or fraudulent," and even if only one of several alleged theories of recovery in the complaint falls within the potential coverage of the policy. *Valley Forge Insurance*, 223 Ill. 2d at 363; see also *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). Therefore, an insurer may not justifiably refuse to defend an action against the insured "unless it is *clear* from the face of the underlying complaint[] that the allegations fail to state facts which

bring the case within, or potentially within the policy's coverage." (Emphasis in original.) *Wilkin Insulation Co.*, 144 Ill. 2d at 73; see also *Aetna Casualty & Surety Co. v. Prestige Casualty Co.*, 195 Ill. App. 3d 660, 664 (1990) ("Unless the complaint, on its face, clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present, and the insurer has a duty to defend.").

¶ 30    An insurer, however, may refuse to defend when the underlying complaint considered in light of the entire insurance policy, precludes the possibility of coverage. *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 359-60 (2003). A court may look beyond the allegations of the underlying complaint if the coverage issue involves the question of whether the party asserting coverage is a proper insured under the policy. *Transcontinental Insurance Co. v. National Union Fire Insurance Company of Pittsburgh*, 278 Ill. App 3d 357, 368 (1996); see also *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 867 (1988); see also *Pekin Insurance Co. V. Wilson*, 237 Ill. 2d 446, 460 (2010) (holding that the trial court may look beyond the underlying complaint in determining the duty to defend); see also *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1024, 1031-32 (2008) (holding that a trial court "need not wear judicial blinders" and may consider evidence beyond the underlying complaint appropriate to a motion for summary judgment to determine whether there is a duty to defend); *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304-05 (1983) (holding that an insurer may properly challenge the existence of a duty to defend "by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions.")

¶ 31    In the present case, after reviewing the "auto exclusion" provision in the insurance policy and comparing it with the allegations in Petrovic's amended complaint and the pleadings and

exhibits offered by the parties we find that Petrovic failed to state facts which either actually or potentially bring the case within the policy's coverage.

¶ 32    The insurance policy to Aral is a commercial general liability policy, which contains an "auto exclusion" provision, explicitly precluding coverage for "bodily injury" or "property damage" "arising out of the ownership, maintenance, use or entrustment to others of any *** 'auto' *** owned or operated by *** any insured." The policy defines an "insured" as, *inter alia*: (1) Aral; (2) Aral's "executive officers" and "directors" "but only with respect to their duties as [the company's] officers or directors"; and (3) Aral's " 'employees' other than *** [the company's] 'executive officers' *** but only for acts within the scope of their employment by [Aral] or while performing duties related to the conduct of [Aral's] business."

¶ 33    Here Petrovic's amended complaint seeks recovery for bodily injury and property damage "arising out of" "ownership" and "use" of an "auto" "owned and operated" by an insured, namely Alasevicius. Specifically, Petrovic's amended complaint alleged that she sustained a closed head injury, incurred medical bills, and property damage to her vehicle when she was struck by a truck operated by Alasevicius in the scope of his employment with Aral. The complaint further alleged that at the time of the accident Alasevicius was driving to one of Aral's job sites, and that Aral "owned and/or operated" the truck used in the accident. In his deposition, Alasevicius stated that he personally paid for and owned the truck that struck Petrovic. In addition, he admitted that he was both the president and sole employee of Aral and that at the time of the accident he was using his truck for his work with Aral. Specifically, Alasevicius averred that he was driving from one job site to another to check on a delivery of materials and that he had a subcontractor inside his truck.

¶ 34    Accordingly, comparing the plain language of the "auto exclusion" provision to Petrovic's

amended complaint and the evidence offered by Alasevicius' deposition, there can be no dispute that the accident alleged in the underlying complaint arose from the "use" or "operation" of an "auto" "owned and operated" by an insured, namely Alasevicius, so as to bar coverage and absolve Erie from defending Aral and Alasevicius in the underlying lawsuit. See *e.g.*, *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96 (2000) (after examining an identical "auto exclusion" provision in a commercial general liability policy covering a school district, the court held that the insurer had no duty to defend the school district against its students' lawsuit arising from a school bus's collision with a train because the injuries arose out of the "use or operation" of a motor vehicle—*i.e.*, the school bus); *Oakley Transport v. Zurich Insurance Co.,* 271 Ill. App. 3d 716, 726 (1995) (after examining an identical "auto exclusion" provision in a commercial general liability policy covering a trucking company, the court held that the insurer had no duty to defend the trucking company in a negligence lawsuit arising from an accident caused by an employee of the trucking company running off the road while operating a semi-truck during the course of his employment.)

¶ 35    Our conclusion is supported by the impetus for "auto exclusion" provisions in commercial general liability policies, such as Erie's. *Oakley Transport*, 271 Ill. App. 3d at 726. As we have explained in the past:

> "The purpose of [an auto] exclusion [provision] is related to the purpose of business liability insurance in general. Standard commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks, including those involved in the ownership maintenance, use or entrustment of an 'auto.' The premium charged by the [commercial general liability] insurer reflects the underwriting objective of placing automobile accidents beyond the scope of coverage.

13

These latter risks involve unique hazards to which the general business of the insured is not subject. For that reason, they are generally covered as a special class by an automobile liability policy[.]" *Id.*

*Accord Mid-Continent Casualty Co. v. Advantage Medical Elecs., LLC,* 196 So. 3d 238, 245 (Ala. 2015) (the purpose of an "auto exclusion" in a commercial general liability policy "is to proscribe coverage for liability that should more properly fall under an automobile-liability policy"); see also *BP America, Inc. v. State Auto Property & Casualty Insurance Co.,* 2005 OK 65, 15 (refusing to read "auto exclusion" provision so that it would "unilaterally convert a general liability policy –without motor vehicle coverage—into a[n] automotive liability policy.")

¶ 36    Nonetheless, on appeal, Petrovic attempts to avoid the effect of the "auto exclusion" provision by arguing that Alasevicius is not an "insured" under the Erie policy because, as an "executive officer," he is covered (and therefore can only be excluded from coverage under the "auto exclusion" provision) with respect to his duties as an executive officer. Petrovic asserts that Erie was therefore required to affirmatively establish that Alasevicius was acting as an executive officer at the time of the accident, *i.e*., that he was managing the business affairs of the corporation, if it wished to avoid coverage. For the following, we disagree.

¶ 37    At the outset, we note that Petrovic's argument contradicts her position in the circuit court. The record reveals that throughout the trial court proceedings, Petrovic made numerous judicial admissions that under the insurance policy Alasevicius could be both an executive officer and an employee, and that at the time of the accident he was in fact performing work as an ordinary employee of Aral, so as to trigger the "auto exclusion" provision.

¶ 38    A judicial admission is a deliberate, clear, unequivocal statement by a party concerning a concrete fact within that party's knowledge. *1550 MP Road, LLC v. Teamsters Local Union No.*

*700*, 2019 IL 123046, ¶ 37. Judicial admissions include admissions in pleadings as well as admissions in open court. *Dremco, Inc.* v. *Hartz Construction Co.,* 261 Ill. App. 3d 531, 536 (1994); see also *Bank of N.Y. Mellon v. Wojcik*, 2019 IL App (1st) 180845, ¶ 31 (An admission in an unverified pleading signed by an attorney is binding on the party as a judicial admission). The effect of a judicial admission is to withdraw a fact from issue, making it unnecessary for the opposing party to introduce evidence in support thereof. *Freedberg v. Ohio Nat'l Ins. Co.*, 2012 IL App (1st) 110938, ¶ 31. Judicial admissions are conclusively binding on a party and, thus, may not be contradicted in a motion for summary judgment or at trial. *1550 MP Road*, 2019 IL 123046, ¶ 37.

¶ 39    In the present case, Petrovic made numerous unequivocal judicial admissions that Alasevicius was an employee not performing work as an executive officer. In her motion for summary judgment, she stated that "[a]t the time of the accident, Alasevicius was an employee of Aral, and was operating a motor vehicle owned by him personally in the furtherance of his employment with Aral." Similarly, in her reply brief to her motion for summary judgment, Petrovic repeatedly argued that Alasevicius was an employee and not an executive officer. Specifically, she began, "At the time of the accident, Alasevicius was an employee of Aral, and was operating a motor vehicle owned by him personally in the furtherance of his employment with Aral." She went on, "*In the accident Alasevicius was an employee of Aral, not an Executive Officer.*" (Emphasis added). Petrovic then explained "*Nothing allege[d] in the underlying pleadings, or common sense, would sustain an argument that a building contractor, an employee, traveling between [two] jobsites, was in a role as an officer or director of a company. He was just acting as an employee for a construction company, and there is no evidence otherwise.*" (Emphasis added). Petrovic then concluded that "Alasevicius was an employee of Aral at the time of the accident. That is not in

dispute."

¶ 40    In addition, during the hearing on the cross-motions for summary judgment, Petrovic's counsel admitted with absolute certainty that at the time of the accident, Alasevicius was an employee and that he was *not* acting in his capacity as an executive officer. As the record of that hearing establishes:

"THE COURT: I thought you just agreed that he was acting as director or officer.

[Perovic's counsel] MR. MARKS: No, I don't think he was acting as a director at the time when this—he was acting as the employee, which he is an actual employee of the company.

THE COURT: Hold on. I'll let you speak. I just need to understand what you are saying.

I just asked you, I said, do you agree that he was acting as an officer, and what I understood you to say was, yeah, he was in the construction business. He was the president, so he was basically carrying on a business as president of this construction company, overseeing the construction.

Didn't you just say that?

MR. MARKS: I said he was the president of the company, but as the—he was not acting as the president of the company. He was an employee of the company at this time going between job sites, dropping off material, taking a nail out, measuring for whatever a contractor does. He was an actual employee of Aral. He wasn't acting as the president. He wasn't doing things that would necessitate triggering the errors and omissions issues, which would be something in which he would be an executive officer doing something. That's not what was happening here. Here he was just an employee.

\*\*\*

THE COURT: All of your employees other than *** your executive officers *** but only for acts within the scope of their employment by you or while performing these duties related to the conduct of your business. So, it was not within the scope of his employment per se to be driving around, was it?

MR. MARKS: Yes, that's what he does. He has to go to job sites.

THE COURT: Well, okay. As what? As president or --

MR. MARKS: No.

THE COURT: How can he -- he's either-- he's either one or the other. You're saying he was the president, but he was also an employee.

MR. MARKS: Exactly.

THE COURT: How can he be both?

MR. MARKS: Because he gets a salary. He's a salaried employee. He gets a W-9. He's operating as an employee of a corporation."

¶ 41     These statements by counsel bind Petrovic to the facts admitted. *See Dremco*, 261 Ill. App. 3d 531. Accordingly, since by Petrovic's own admissions Alasevicius was acting as Aral's "employee" at the time of the accident, he was an "insured" under the policy and the "auto exclusion" provision applies to bar coverage of the accident.

¶ 42     What is more, even if, as Petrovic urges us to do, we were to disregard her judicial admissions before the circuit court and look solely at the plain language of the insurance policy, we would nonetheless find that whether Alasevicius was an executive officer, or an ordinary employee is of no consequence, since under either scenario he was an "insured" at the time of the accident.

¶ 43     By its plain and ordinary terms, the "auto exclusion" provision applies to "any insured,"

and therefore to both Aral's "executive officers" and "employees."

¶ 44    Petrovic nonetheless asserts that under the plain language of the policy Alasevicius cannot qualify as both an "executive officer" and an ordinary "employee." In support, she points out that the policy's definition of an "insured" includes, *inter alia*, two distinct categories: (1) "executive officers" performing their executive duties; and (2) " 'employees,' other than *** [Aral's] 'executive officers'" "acting within the scope of their employment" or "performing duties related to the conduct of [Aral's] business." (Emphasis added). Relying on the phrase "other than *** your 'executive officers' " in the second category naming employees as additional insureds, Petrovic argues that the two categories of insureds are mutually exclusive. We disagree.

¶ 45    Contrary to Petrovic's position, the plain an ordinary reading of the policy's different categories of insureds reveals that the definition of an insured is expansive rather than restrictive. The policy's reference to "employees" "other than" "executive officers" does not eliminate coverage for those "employees" who are also "executive officers." Rather it provides an additional classification of an employee who is entitled to coverage as an "insured." The distinction is made only to explain that "executive officers" are covered for their duties as executive officers and "employees" for any acts within the scope of their employment. Nothing in the policy limits a person to coverage as either an "executive officer" or an "employee." Nor does Petrovic cite to any legal authority to support this position.

¶ 46    Her only citation is to *Illinois Insurance Guaranty Fund v. Santucci*, 384 Ill. App. 3d 927 (2008), which held that a commercial general liability policy did not cover Santucci because he was not acting in his capacity as an executive officer when he allegedly failed to prevent his horses from escaping his home and causing an accident. That decision, however, did not involve the interpretation of an "auto exclusion," provision, nor did it in any way address the interplay between

an insured's status as an employee and/or an executive officer of the corporation. Accordingly, it is completely irrelevant.

¶ 47    While our research has unveiled no Illinois decision directly on point, we find the holding of the Montana Supreme Court in *Brabeck v. Employers Mutual Casualty Co.*, 2000 MT 468, 16 P.3d 355 (2000) instructive. In that case, an insurer brought a declaratory judgment action seeking a declaration that it had no duty to defend a corporation against a claim in the underlying lawsuit that it was vicariously liable for the negligent driving of the daughter of one of its employees. *Id.* ¶ 1. At the time of the accident, the daughter was driving a car owned by her father, Gerald, who was both an executive officer and an employee of the corporation. *Id.* ¶ 3. The underlying negligence complaint alleged that the daughter was acting on behalf of the corporation by operating Gerald's car at his request and for the purpose of business or work to be performed for the benefit of the corporation. *Id.* ¶ 11. Gerald owned the vehicle involved in the accident and had it personally insured. *Id.* ¶ 3. Gerald was also an insured under a commercial general liability policy of the corporation. *Id.* ¶ 3. The language of that policy is undistinguishable from the one in the instant case. *Id.* ¶¶ 13-14. It contains an identical "auto exclusion" provision and the same definition of "insureds." *Id.*

¶ 48    In *Brabeck*, the Montana Supreme Court found Gerald's "alleged conduct within his capacity either as an executive officer or an employee, thereby rendering him an insured with respect to the alleged conduct." *Id.* ¶ 17. As the court explained: "Gerald is both an executive officer and an employee of the corporation. Thus, he qualifies as an insured whether he was performing duties in his capacity as the corporate secretary or in his capacity as an employee of the corporation." *Id.* ¶ 15. The court therefore found that the "auto exclusion" provision applied to Gerald and that the insurer was not required to indemnify or defend the corporation, Gerald, or his

19

daughter for the "bodily injuries" and "property damage" sustained in the automobile accident. *Id*. ¶ 18.

¶ 49    We agree with *Brabeck*'s interpretation of the insurance policy and find that just as in that case, here Alasevicius qualified as an "insured" regardless of whether at the time of the accident, he was performing in his capacity as the president of Aral or as an ordinary employee. We find this to be particularly true where Alasevicius runs a carpentry business and is both its sole executive officer and employee.

¶ 50    Petrovic's interpretation of the insurance policy to the contrary would lead to an absurd result. Instead of providing comprehensive coverage to sole proprietors like Alasevicius, Petrovic's reading would confine Alasevicius' coverage to his role as an executive officer, *i.e.*, his business strategy and decision-making, thereby eliminating any liability coverage for his field work. Since Alasevicius is the sole employee of his carpentry business, aside from covering the present automobile accident, Petrovic's interpretation would eliminate coverage for literally every other liability claim, thereby rendering his coverage illusory. *See Middlesex Mut. Assurance Co. v. Fish*, 738 F. Supp. 2d 124, 135 (D. Me 2010) (refusing to interpret an insurance policy with identical language to that of Erie's as eliminating the executive officer from coverage when he does the work of an ordinary employee because, under such an interpretation, coverage would be "largely illusory, covering [the insured] only for a minute percentage of the risks;" noting that such an argument "for practical purposes takes general liability coverage away from the [insured], insuring only his most momentary and risk-free activity[,]" *i.e.*, providing him coverage "while he sign[s] the corporate tax returns but not while he ma[k]e[s] and install[s] cabinets").

¶ 51    We further disagree with Petrovic's position that the language of the policy is ambiguous and therefore must be construed in her favor. Our courts have repeatedly held that "although

'creative possibilities' may be suggested," when considering the existence of an ambiguity in an insurance policy, "only reasonable interpretations will be considered." *Hobbs*, 214 Ill. 2d at 17; see also *State Farm Mut. Auto. Ins. Co. v. Murphy*, 2019 IL App (2d) 180154, ¶ 26. Moreover, the court will not adopt an interpretation which rests on "gossamer distinctions" that the average person, for whom the policy is written, cannot be expected to understand. *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010).

¶ 52    In the present case, Petrovic's interpretation of the policy language is neither reasonable, nor supported by legal authority. Petrovic cites to no decision in which a court has held that the terms of the "auto exclusion" provision such as the one in the instant case are ambiguous. In addition, Petrovic is not an insured under the policy. Accordingly, her attempt at sacrificing the robust coverage provided to Aral and Alasevicius in favor of exceptionally limited coverage, which would include the instant automobile accident, is at best suspect, and at worst, made purely for personal gain. Under these circumstances, "we will not strain to find an ambiguity where none exists." *Hobbs*, 214 Ill. 2d at 17.

¶ 53                                    IV. CONCLUSION

¶ 54     For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 55    Affirmed.