2023 IL App (1st) 220547-U

SIXTH DIVISION

November 9, 2023

No. 1-22-0547

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| STEPHANIE IPINA, individually and on behalf of all similarly situated individuals, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 21 CH 2156 |
| TCC WIRELESS, a Delaware limited liability company, | ) ) ) | Honorable Michael T. Mullen, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:*   We reverse the circuit court's order granting appellee's motion to compel arbitration and dismiss proceedings because appellee is collaterally estopped from enforcing the arbitration clause of its employment agreement.

¶ 2    Appellant Stephanie Ipina appeals from the circuit court's grant of appellee TCC Wireless's (TCC) motion to compel arbitration and dismiss her complaint, claiming the court erred because (1) TCC was collaterally estopped from enforcing the arbitration clause, (2) TCC's motion to compel failed on the merits, and (3) in the alternative, the court should have granted Ipina's motion for discovery on whether TCC acted with unclean hands. For the foregoing reasons, we reverse.

¶ 3                                    BACKGROUND

¶ 4    On May 4, 2021, Ipina filed a class action complaint against TCC. Therein, she alleged a violation of her rights under the Biometric Information Privacy Act (BIPA) (740 ILCS 14/15 (West 2020)). Specifically, Ipina alleged that during her employment with TCC, it forced Ipina to use a finger scanner, which collected Ipina's fingerprints, to clock in and out of work. She alleged TCC maintained records and provided information regarding her fingerprints to its payroll provider, without explaining this conduct to her or other employees, or procuring her written authorization.

¶ 5    Ipina included allegations describing a prior BIPA class action lawsuit against TCC, Garcia v. TCC Wireless, No. 17-CH-14017 (Cir. Ct. Cook County) (Garcia). The plaintiff in Garcia also alleged BIPA violations. Ipina alleged that in Garcia, TCC moved to compel arbitration, which the circuit court denied. The parties then reached a "class-wide settlement." Pursuant to that settlement, TCC created a list of 899 employee class members, but did not include Ipina. The court entered a final order and judgment pursuant to the Garcia settlement on June 11, 2020.

¶ 6    Here, Ipina sought to represent a class consisting of, "All individuals identified in [TCC's] Biometric System within the applicable statutory period who were not members of the settlement class in [Garcia]." She alleged that the class could include "scores, if not hundreds" of other employees.

¶ 7    Ipina also attached her employment agreement, and the employment agreement at issue in Garcia, to the complaint. Both contained the same language. The agreements, in relevant part, contained the following clause:

> "Any dispute arising out of or relating in any [*sic*] to Employee's employment with the Company [TCC], including but not limited to the interpretation of enforcement or any of the Parties' rights or obligations under this Agreement, other than those seeking equitable relief, shall be resolved by binding arbitration…Proceeding to arbitration and obtaining an award under the arbitration shall be a condition precedent to the bringing and maintaining of any action in any court with respect to any dispute arising under this Agreement, except for (i) the institution of a civil action seeking equitable relief, or (ii) the institution of a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact."

¶ 8    On September 22, 2021, TCC filed a motion to compel arbitration and dismiss proceedings. TCC generally denied the allegations in Ipina's complaint, but TCC alleged the denial was irrelevant to the motion because pursuant to Ipina's employment agreement, she had to submit the claim to arbitration instead of filing suit in the circuit court. Regarding Garcia, and Ipina's potential involvement therein, TCC stated, "Although Plaintiff was employed during [the relevant time period] and would have been included in [the Garcia] class, Plaintiff's name was inadvertently left off the class list because the store at which she worked had been acquired by TCC." TCC explained that the Garcia settlement class included "all persons working for TCC in Illinois at any time between October 21, 201[2] to the present and whom TCC caused to be fingerprinted or finger-scanned when clocking in or out of work and who did not sign the TCC Wireless consent." In a footnote, TCC contended that the fact the Garcia court refused to compel arbitration was irrelevant

because "the decision regarding arbitration in the Garcia action was based on TCC's lack of denial of the substantive allegations in the Complaint, rendering the case a summary proceeding," which did not apply here because "TCC specifically denies the allegations in this Complaint, removing the procedural irregularity."

¶ 9 TCC attached the affidavit of Eric Tarasievich, TCC's Chief Financial Officer, to its motion. Tarasievich averred, in relevant part, "There are various factual allegations in dispute in the above-referenced matter. TCC denies that it did not properly comply with the requirements of the Illinois Biometric Information Privacy Act, and [denies] that it engaged in any wrongdoing as alleged."

¶ 10 On October 1, 2021, Ipina filed a motion for leave to issue discovery. Ipina argued that TCC admitted in its motion to compel arbitration that it should have included Ipina in the Garcia settlement class, and only omitted her due to an "inadvertent mistake." She contended she "should be allowed to take discovery as to how [TCC] compiled the list of persons included in the previously settled class action before the parties address" the motion to compel. Ipina continued that, "The ruling in [Garcia] holding [TCC's] arbitration agreement is unenforceable combined with [TCC's] admission that it should have included Plaintiff and at least some of her coworkers in the settlement," showed that the doctrines of "unclean hands, equitable estoppel, and the maintaining of the integrity of the judicial process" applied to bar arbitration. She noted that it was TCC's responsibility to identify the employees who should have been included in the Garcia settlement, and, as such, "Allowing [TCC] another crack at enforcing its employment arbitration agreement *** would be to reward [TCC] for mishandling the settlement class list in [Garcia]."

¶ 11 Ipina attached two circuit court orders from Garcia to her motion. In a June 4, 2018, order, the court denied TCC's motion to compel arbitration, stating, "The Motion provides no evidence

as to whether any facts are disputed," and in an August 2, 2018, order, the court denied TCC's motion to reconsider.

¶ 12    On October 25, 2021, TCC responded to Ipina's motion for leave to issue discovery, arguing that Ipina's discovery request was inappropriate because the proffered discovery did not address whether Ipina signed the employment agreement or whether Ipina's claim should be arbitrated. TCC reiterated that it denied the allegations in Ipina's complaint, and that Ipina's name was "inadvertently left off the class list." TCC explained this omission in detail, stating that, "Following the start of her employment, [Ipina] signed a consent form, allowing TCC to use her biometric fingerprint as part of its time keeping system." Though TCC implemented the consent forms before Ipina started with TCC, Ipina only "signed such a form after she started work for TCC," specifically "a couple of months later." TCC believed this occurred because Ipina was not hired directly by TCC. At some point, "TCC learned *** that [Ipina] had not signed such form when she moved over to TCC, and later did, in fact, have [Ipina] sign a Consent Form for use of her Biometrics." Finally, TCC contended that Ipina's proper course to pursue a claim related to the Garcia class list was a motion to reopen in Garcia, but her choice to file a new action now made whether she should have been included in the class an issue for the arbitrator.

¶ 13    Also on October 25, 2021, Ipina responded to TCC's motion to compel arbitration, arguing that an order compelling arbitration is akin to an injunction and thus equitable relief, and TCC could not avail itself of such relief because it had acted with "unclean hands" in compiling the Garcia class list. She also argued both judicial and collateral estoppel applied to bar arbitration. Regarding collateral estoppel, Ipina argued that TCC "essentially conceded" that it fingerprinted employees in Garcia, and though TCC now purported to dispute Ipina's allegation, it did not deny that it, "fingerprinted or finger-scanned Ipina or other employees clocking in or out of work and

*** cannot deny it obtained Ipina's written consent to obtain her biometric information until months after" it began collecting the information. She contended that Tarasievich's affidavit was insufficient because it did not specifically dispute the fingerprinting allegations, and offered only conclusory statements. Thus, she concluded, the "factual posture" of her case was the same as in Garcia. She further noted that the arbitration clauses in Garcia and here were identical, the class action settlement was a final judgment, and Ipina was in privity with the Garcia class members. Finally, Ipina argued TCC's motion failed on the merits because, as in Garcia, there were no facts in dispute.

¶ 14   On November 1, 2021, TCC replied in support of its motion to compel arbitration, contending in relevant part that the motion to compel was akin to a motion to dismiss under section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)), and thus did not seek an equitable remedy, citing *Griffith v. Wilmette Harbor Ass'n, Inc.*, 378 Ill. App. 3d 173 (2007). TCC also confirmed that Ipina "signed a consent form a couple of months after she started working for TCC." Regarding collateral estoppel, TCC denied the circuit court's orders in Garcia applied because the Garcia court determined the issue based on the "unique procedural posture of that case." It further argued Tarasievich's affidavit need not be more detailed at this stage of the litigation, and TCC's ability to seek arbitration could be compromised if it included more detail.

¶ 15   On March 24, 2022, the circuit court entered an order granting TCC's motion to compel arbitration, denied Ipina's motion for discovery, and dismissed the case. During argument on March 23, 2022, counsel for TCC stated Ipina was left out of the Garcia settlement class by mistake, insisting TCC engaged in no "intentional fraud or wrongdoing." TCC's counsel explained that TCC had left out hundreds of employees (including Ipina) from the Garcia class list, each an employee for the distributor for whom Ipina worked. Specifically, TCC acquired the distributor in

question after it implemented a policy that new employees had to sign a written BIPA authorization, but due to a human resources error, that authorization was not provided to the new employees from the distributor in question before they started working for TCC. When TCC realized this error, it "went back and fixed" this gap by procuring a signed BIPA authorization form from these employees, including Ipina. Counsel for TCC alleged that after TCC discovered it should have included Ipina in the Garcia settlement class, it "offered to allow Ipina to become part of the Garcia litigation and to get the recovery that she otherwise would have been entitled to had it not made the mistake," but Ipina declined.

¶ 16    In granting the motion to compel arbitration and denying Ipina's motion for discovery, the court explained there was no "evidence" supporting unclean hands. Regarding collateral estoppel, the court stated only, "I'm concluding that the factors that would establish this doctrine of collateral estoppel have not been established." The court stated that Tarasievich's affidavit was sufficient because "it specifically puts everything at issue [in] a factual way," and noted Ipina had not filed a motion to strike the affidavit. This appeal followed.

¶ 17                                    JURISDICTION

¶ 18    We first address jurisdiction. The parties agree this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017) because the circuit court granted a motion to dismiss. This analysis is overly simplistic because an order granting a motion to compel arbitration is interlocutory in nature. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Another Illinois Supreme Court rule, however, applies—Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which permits interlocutory appeals of orders regarding injunctions. As the *Salsitz* court explained, an order granting or denying a motion to compel arbitration is injunctive in nature, and

7

thus appealable pursuant to Rule 307. *Salsitz*, 198 Ill. 2d at 11. Hence, this court has jurisdiction to consider Ipina's appeal.

¶ 19                                    ANALYSIS

¶ 20    On appeal, Ipina argues that the circuit court's order granting TCC's motion to compel arbitration and dismiss should be reversed because (1) collateral estoppel bars TCC from enforcing the arbitration clause, and (2) TCC's motion fails on the merits. Ipina also requests, in the alternative, that we vacate the court's order and remand for discovery on whether TCC should be barred from seeking to enforce the arbitration clause because it acted with unclean hands in constructing the Garcia settlement class. TCC responds that collateral estoppel does not apply, the court properly interpreted and applied the employment agreement, and unclean hands does not apply in these circumstances.

¶ 21    We first address collateral estoppel. Collateral estoppel is an equitable doctrine, sometimes referred to as issue preclusion, which, "When properly applied *** promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). A party seeking to collaterally estop its opponent from raising a particular issue or argument must establish three elements: (1) the current issue is identical to one resolved in the prior adjudication, (2) the court in the previous matter entered a final judgment on the merits, and (3) "the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Id.* at 77. Additionally, the proponent must show the "potential for appellate review" was "exhausted." *Ballweg v. City of Springfield,* 114 Ill. 2d 107, 113 (1986). We review *de novo* a circuit court's decision on whether collateral estoppel applies. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010).

¶ 22   Ipina claims that TCC should be estopped from arguing the arbitration clause in the employment agreement applies to her because the Garcia court resolved this issue against TCC. TCC responds that Ipina cannot establish any of the three elements of collateral estoppel.

¶ 23   The record shows that in Garcia, TCC did not dispute that it collected its employees' biometric information without procuring their authorization. The circuit court cited this lack of disputed facts to find the arbitration clause did not apply because the employment agreement contained an exception for claims "of a summary nature where no facts are in dispute." After the court then denied TCC's motion for reconsideration, the parties settled, and TCC generated a list of employees that qualified for the settlement class. In the present matter, TCC admitted that it compiled the class incorrectly, and it should have included Ipina (and potentially over 230 other employees), because TCC collected Ipina's biometric information for at least some period of time before she signed an authorization. TCC settled with the incomplete Garcia class, and the court entered an order accepting the settlement agreement and dismissing the case with prejudice.

¶ 24   Ipina then filed her complaint, highlighting that she did not participate in the Garcia settlement. TCC moved to compel arbitration on the basis that the Garcia court's orders on the arbitration clause did not apply because Ipina filed a new matter, permitting TCC to now dispute facts and render inapplicable the arbitration clause exception the Garcia court cited. TCC attached Tarasievich's affidavit to its motion. Tarasievich averred that there were "various factual allegations in dispute," specifically that TCC denied it did not comply with BIPA or engaged in "any wrongdoing." The parties agree the employment agreement language at issue here is identical to the language in Garcia.

¶ 25   Based on this record, we find collateral estoppel bars TCC from enforcing the arbitration clause in Ipina's employment agreement, and thus the circuit court's order must be reversed.

¶ 26    Each element of collateral estoppel is satisfied. First, the issues are identical. In the Garcia litigation, TCC attempted to enforce its arbitration clause in a situation where it did not deny that it collected employees' biometric information without authorization. The circuit court decided it could not because such a situation fell under the exception in the employment agreement for "a civil action of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact." The court also denied TCC's motion to reconsider this point. Despite this ruling, TCC now attempts to relitigate the exact same issue—whether it can enforce the identically worded arbitration clause in Ipina's employment agreement in an instance where, as TCC admits, it collected Ipina's biometric information without her authorization. Thus, the first element of collateral estoppel is satisfied.

¶ 27    TCC makes broad statements, both in its motion below and briefing before this court, that the posture is different here because it generally denied the allegations in Ipina's complaint. This argument is belied by the record. TCC cannot use blanket denials to counteract its own admissions. Its repeated stance throughout this case, both in the circuit court and before this court, is that (1) Ipina should have been included in the Garcia class because (2) TCC collected her biometric information for some period of time before she signed an authorization. TCC is bound by these admissions. See *Erie Insurance Exchange v. Aral Construction Corp.*, 2022 IL App (1st) 210628, ¶ 37. Moreover, Tarasievich does not deny that TCC collected Ipina's biometric information in his affidavit, only that TCC did not violate BIPA or engage in wrongdoing in so collecting. This does not create a disputed fact because whether TCC's admitted conduct constitutes a BIPA violation is an issue of law.

¶ 28    Regarding the second element of collateral estoppel, we find that the settlement order constituted a final judgment on the merits. There appears to a be a split of authority on whether

settlement agreements qualify as final orders on the merits for purposes of *res judicata*, a doctrine closely related to collateral estoppel that also requires a final order on the merits. See *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 340 (2005) (explaining the split in authority, and comparing *SDS Partners, Inc. v. Cramer*, 305 Ill. App. 3d 893, 896 (1999) (order is final) with *Kandalepas v. Economou*, 269 Ill. App. 3d 245, 252 (1994) (order is not final)). First district panels have typically favored the *Kandalepas* approach. See *Fidelity National Title Insurance Co. v. Home Equity Title Services*, *Inc.*, 2016 IL App (1st) 141098-U, ¶¶ 27-28; *Schwabe v. Hahn Agency, Inc.*, 2012 IL App (1st) 110635-U, ¶¶ 49-54. The Illinois Supreme Court, however, has made a definitive statement on this issue in the context of whether collateral estoppel can apply to interlocutory orders in cases that ultimately resolve via settlement. In *Du Page*, the Illinois Supreme Court stated, "Collateral estoppel may apply to determinations made prior to the entry of a settlement agreement disposing of the underlying litigation." *Du Page*, 195 Ill. 2d at 86. It explained that this was the case, in part, because "interlocutory orders rendered in a case typically merge with the judgment for purposes of appellate review." *Id.*; see also *Gaston v. Hazeltine*, No. 3:21-CV-896 JD, 2023 WL 371933, at *7 (N.D. Ind. Jan. 24, 2023) (collecting cases from multiple jurisdictions, including *Du Page*, which support the proposition that "policy reasons counsel in favor of applying the doctrine of collateral estoppel to interlocutory judgments after settlement and dismissal with prejudice").

¶ 29    We find that the *Du Page* approach is appropriate. Collateral estoppel exists to prevent litigants from doing exactly what TCC attempts. The doctrine's purpose is to prevent a party from losing an issue on the merits, but then relitigating it before a different judge to procure the desired result. *Du Page*, 195 Ill. 2d at 77. Again, in Garcia, TCC litigated the issue of whether, in a situation where it admits it collected employee biometric information without authorization, it could enforce

its arbitration clause to force employees to arbitrate claims arising out of that conduct. TCC lost this motion, and the trial court denied TCC's motion to reconsider. The Garcia court's orders on this issue were appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), as explained above, though TCC chose not to appeal. See *Salsitz*, 198 Ill. 2d at 11. Thus, this issue was fully decided, and the opportunity to appeal exhausted, and it was only after this process that TCC decided to settle. When the settlement became final via court order, the earlier order denying arbitration merged with that final order. To allow TCC to obtain an opposite result after its previous opportunity to fully litigate the issue would run directly counter to why the doctrine of collateral estoppel exists. *Du Page*, 195 Ill. 2d at 77. As such, a final judgment on the merits exists for purposes of the second element of collateral estoppel.

¶ 30   Finally, the third element of collateral estoppel is also satisfied because TCC is the party against whom estoppel is asserted. TCC was a party in Garcia, where it had the same incentive to fully litigate the enforcement of the arbitration clause (and in fact did so). We note that both parties briefed the issue of Ipina's privity, but this is irrelevant—the privity requirement only applies to the party against whom estoppel is asserted. TCC. *Id.*

¶ 31   We find that each element of collateral estoppel is present, and TCC cannot enforce the arbitration clause in the employment agreement regarding Ipina. We note that because TCC is barred by collateral estoppel, we need not address Ipina's arguments regarding the merits of TCC's motion, or the circuit court's denial of her motion for discovery.

¶ 32                                CONCLUSION

¶ 33   Collateral estoppel bars TCC from enforcing the arbitration clause in Ipina's employment agreement. Accordingly, the circuit court's order granting the motion to compel arbitration and dismiss is reversed, and the case is remanded for further proceedings consistent with this order.

12

¶ 34   Reversed and remanded.